IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

2021 FEB -5 P 3: 41

MELVIN TURNER,

    Plaintiff,

    v.

JO MARTIN, et al.,

    Defendants.

CV 120-050

## O R D E R

Plaintiff Melvin Turner ("Turner") asserts claims against Corporal Jo Martin ("Martin"), Sheriff Richard Roundtree ("Roundtree"), Officer John or Jane Doe(s), Major Steven Strickland ("Strickland"), Sergeant William Steptoe ("Steptoe"), Lieutenant Amelio R. Lamkin ("Lamkin"), Lieutenant Mike D'Amico ("D'Amico"), and members of the Sheriff's Merit Board John and/or Jane Does for deprivation of his federal constitutional rights under 42 U.S.C. § 1983. All Defendants have filed individual motions to dismiss in lieu of answering Plaintiff's Complaint. (Docs. 14-21.) The Court will consider each of the motions in Part III, *infra*.

## I. BACKGROUND

On March 31, 2018, Plaintiff was in an automobile accident on Ellis Street in Augusta, Georgia and fled the scene. (Compl.,

Doc. 1, ¶ 87.)  Subsequently, a group of police officers located Plaintiff at a friend's residence, and he was arrested by Defendant Martin.   After  Defendant  Martin  handcuffed  Plaintiff,  he  hit Plaintiff  in  the  face  and  stated,  "that's  for  making  me  crawl through the window, pig." (Id. ¶¶ 101-105.)  This is the incident giving rise to the present suit.

Plaintiff's  Complaint  also  recounts  seven  prior  incidents involving  Defendant  Martin  to  illustrate  his  "performance  and disciplinary history" and prove "it was substantially likely that Martin would use force that was not objectively reasonable again by  the  time  he  hit  [Plaintiff]."  (Id.  at  2,  4.)   The  Court summarizes each prior occurrence below in the light most favorable to Plaintiff as the non-moving party.

1. December 2009 – OC Spray Incident

Defendant Martin used "OC Spray" to subdue an arrestee and then  failed  to  follow  the  appropriate  reporting  procedure  and notify a supervisor of the use; he only notified dispatch.  (Id. ¶¶ 13-15.)  Defendant Martin was "reprimanded and counselled" by Defendant  Steptoe  and  this  was  recorded  in  Defendant  Martin's personnel file.  (Id. ¶¶ 16-17.)

2. December 2010 – Yulia Filimonova ("Filimonova") Incident

On December 18, 2010, Defendant Martin was working a "special" shift as a bouncer at a sports bar.  (Id. ¶ 20.)  Filimonova, a bartender,  had  been  joking  around  with  Defendant  Martin  and

according to the Disciplinary Report and Internal Affairs Report, he "slapped [her] on her buttocks with an open hand." (Id. ¶ 28.) Filimonova complained to a manager and a waitress about the action and approached Defendant Martin about it, to which he "brandished his handcuffs and threatened her with jail if she told anyone about the incident." (Id. ¶¶ 32-34.) Filimonova proceeded to call her boyfriend who arrived at the bar and approached Defendant Martin about the incident. (Id. ¶¶ 36-37.) Defendant Martin "physically menaced" and forced the boyfriend outside the bar, and then proceeded to arrest him for disorderly conduct. (Id. ¶¶ 38, 43.) Another officer attempted to intervene and advised Defendant Martin to simply cite the boyfriend for disorderly conduct, but the Complaint does not clarify if this course of action was taken. (Id. ¶ 44.)

3. February 2011 – Baton Incident

On February 20, 2011, Defendant Steptoe wrote an Internal Affairs Report concerning Defendant Martin hitting a suspect in the back of the knee with an "asp baton" after the suspect was already under the control of other officers. (Id. ¶¶ 48, 51.) Defendant Steptoe sent the complaint to the Disciplinary Review Board with a suggestion that Defendant Martin be suspended for eight days with an additional probation period. (Id. ¶ 50.) Upon reviewing the case, the Disciplinary Board accepted the recommendation and suspended Defendant Martin for eight days and

3

gave him twelve months of probation. (Id. ¶ 52.) The Sheriff[1] approved the punishment and gave notice to the Sheriff's Merit Board, which upheld the suspension based upon the Sheriff's approval. (Id. ¶¶ 53-55.)

4. February 2014 – Verbal Abuse Incident

On February 14, 2014, Denise Lachman contacted Internal Affairs to complain that Defendant Martin screamed at her at the scene of an auto accident, but was pleasant to the other driver, who Defendant Martin appeared to know. (Id. ¶¶ 58-59.)

5. February 2014 – Complaint to Internal Affairs

On February 25, 2014, Internal Affairs received a complaint from Andrea D. Rodriguez that when traffic lights were out, Ms. Rodriguez asked Defendant Martin, who was working the area, for instructions and he "berated her" and "his behavior was unprofessional and aggressive." (Id. ¶¶ 63, 65-66.) The same day, Internal Affairs emailed Defendant Lamkin, Division Commander, to let him know this was the third or fourth complaint Internal Affairs had received regarding Defendant Martin in the last four to five months. (Id. ¶ 67.)

6. May 2016 – Aiken County Incident

On May 27, 2016 around 4:00 AM, Crystal Campbell, a friend of Defendant Martin, was intoxicated and called Defendant Martin and

---

[1] The Sheriff at the time of this incident was not Sheriff Roundtree, the Defendant in the present case.

4

another officer asking for help.  (Id. ¶¶ 69-70).  Defendant Martin, while on duty, responded in his patrol car and drove Ms. Campbell to North Augusta, South Carolina without notifying his supervisors.  (Id. ¶¶ 71-72.)  In her intoxicated state, Ms. Campbell fell asleep and when they arrived at her house, she was "combative and uncooperative" so Defendant Martin had to physically remove her from the car.  (Id. ¶ 73-74.)  Ms. Campbell reacted to Defendant Martin's force by biting him, and in response, Defendant Martin struck her across the face.  (Id. ¶ 75-76.)  The Aiken County Sheriff's Office reported the incident to the Richmond County Sheriff's Department before Defendant Martin had informed them of the situation.  (Id. ¶ 77.)  The Internal Affairs review stated that Defendant Martin's actions violated the policies of the Sheriff's Office and have left him open to false accusations or possible arrest.  (Id. ¶ 82.)  Defendant Martin admitted to the following policy violations: (a) failing to notify a supervisor to handle a situation involving friends or family; (b) failing to notify dispatch he was transporting a female in his patrol car, and of the time/mileage/location/crossing of state lines while transporting a female; (c) failing to notify supervisor of the entire situation and about the assault incident even after it occurred; (d) failing to file the required use of force and case reports; and (e) failing to activate his body camera during the occurrence.  (Id. ¶ 83.)

5

7. 2017 - Motorcycle Incident

In 2017, Defendant Martin was pursuing a motorcycle that was evading a traffic stop with the help of another officer.[2]  (Id. ¶ 84.)  Defendant Martin drove his car in a way to "push" the motorcycle towards the curb in an attempt to stop the pursuit. (Id.)  Defendant D'Amico wrote a report that the "box technique" used was not appropriate because the vehicle being pursued was a motorcycle and Defendant Martin inappropriately used the technique twice during the chase.  (Id. ¶ 85.)

Throughout Plaintiff's recounting of these seven occurrences, there is incessant conclusory language as a summary to each event suggesting things like Defendant Martin "should have been fired" or "should have been terminated after this incident," as well as propositions that actions "should have put supervisors on notice," and many more.  The Court addresses the legal standard in the next section but notes here that it has no duty to accept conclusory statements as true at the motion to dismiss stage.

## II. LEGAL STANDARDS

The Defendants challenge Plaintiff's Complaint and move to dismiss under Rules 12(b)(1) and 12(b)(6).[3]

---

[2] The specific date for this incident is not provided.
[3] Defendants do not explicitly move to dismiss under Rule 12(b)(1), but rather move to dismiss pursuant to Eleventh Amendment immunity which the Court construes under Rule 12(b)(1) pursuant to Eleventh Circuit precedent.

## A. 12(b)(1) – Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924-25 n.5 (11th Cir. 2003). Defendants' motions move to dismiss pursuant to the Eleventh Amendment and doctrine of qualified immunity. Therefore, as the motions relate to immunity, they are facial attacks on the Complaint because the Court's resolution of the immunity question does not depend on adjudicating the merits of the case. Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys., 69 F. Supp. 3d 1359, 1363 (S.D. Ga. 2014) ("In the Eleventh Circuit, the defense of sovereign immunity is not merely a defense on the merits. An assertion of Eleventh Amendment sovereign immunity essentially challenges a court's subject matter jurisdiction." (citing Seaborn v. State of Fla. Dep't of Corr., 143 F.3d 1405, 1407 (11th Cir. 1998) (internal quotation marks omitted)); Johnson v. Georgia, No. 1:13-CV-3155, 2014 WL 1406415, at *2 (N.D. Ga. Apr. 9, 2014) (treating the state's Rule 12(b)(1) motion to dismiss the plaintiff's § 1983 claims on immunity grounds as a facial attack in the absence of citations to extrinsic evidence by the state). In a facial attack on subject matter jurisdiction, the complaint's allegations are deemed presumptively truthful, and the "court is required merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter

jurisdiction." Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)) (internal quotation marks omitted).

## B. 12(b)(6) - Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts.

Id. at 677-79.   Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."   Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## C. Fourth and Fourteenth Amendment Violations

Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights.   It is well-established that the Fourth Amendment is made applicable to the states by the Fourteenth Amendment. Terry v. Ohio, 392 U.S. 1, 8 (1968).   The Fourteenth Amendment, though, does not provide an independent source of recovery in this context.   Lloyd v. Leeper, 451 F. Supp. 3d 1314, 1322-23 (M.D. Fla. 2020).

> Clearly, the gravamen of the . . . [c]omplaint was the allegedly improper . . . seizure[] for which the Defendants were responsible.   The right to be free from unreasonable searches and seizures is protected by the Fourth Amendment, rather than the Fourteenth, and where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process found in the Fourteenth Amendment, must be the guide for analyzing the claim. . . . Thus, as to the allegations made in the . . . [c]omplaint, a Fourteenth Amendment claim would have been improper.

Id. at 1323 (quoting Signature Pharmacy, Inc. v. Soares, No. 6:08-cv-1853, 2012 WL 1631681, at *2 (M.D. Fla. May 8, 2012) (internal

citations omitted)).   Because the Complaint does not assert an independent basis for recovery under the Fourteenth Amendment, Plaintiff's § 1983 claim premised on the Fourteenth Amendment must be dismissed.   Only the Fourth Amendment's prohibition against unreasonable searches and seizures can be the basis of a § 1983 claim.   See Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010).   Thus, the Court will continue its analysis as to Plaintiff's claim that Defendants violated his Fourth Amendment rights.

The Fourth Amendment affords individuals the right to be secure in their persons against unreasonable seizures.   U.S. CONST. amend. IV.   The Amendment "encompasses the right to be free from excessive force during the course of a criminal apprehension." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).   To establish a Fourth Amendment excessive force claim, a plaintiff "must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Corbitt v. Vickers, 929 F.3d 1304, 1315 (11th Cir. 2019) (citation and internal quotation marks omitted).

### III. DISCUSSION

Plaintiff divides his claims into two groups.   Claim I asserts the liability of Defendant Martin and Claim II asserts the liability of the supervisors.   (Compl., at 18-19.)   It is

inconsistently stated, and therefore unclear, whether Defendants are sued in their individual or official capacities, so out of an abundance of caution, the Court addresses Defendants' arguments for both types of claims made in their motions to dismiss.[4]   The Court will address each of these claims in turn.

## A. Claim 1: Liability of Defendant Martin

Plaintiff's first claim is against Defendant Martin, as a deputy with the Richmond County Sheriff's Department, and alleges he used force in an "objectively unreasonable manner" in violation of the Fourth or Fourteenth Amendments.   As noted above, the Fourteenth Amendment does not provide a source of recovery for § 1983 claims, and consequently that claim is **DISMISSED**.

As for the Fourth Amendment claim, Defendant Martin moves to dismiss this claim pursuant to: (1) Rule 12(b)(6), (2) Rule 8, (3) the Eleventh Amendment, and (4) qualified immunity.   However, Defendant Martin only provides analysis for his immunity arguments, which the Court will address below.   He argues that making an arrest is within his official responsibility as a sheriff's deputy and therefore he was acting as an arm of the state, entitling him to Eleventh Amendment immunity in his official capacity.   Further, Defendant Martin argues, pursuant to the Fourth

---

[4] Defendants' motions also provide defenses to state law claims. Plaintiff has since clarified he asserts no state law claims. (See Doc. 25, at 1.)

Amendment's factors for reasonableness of force, that "Plaintiff was only struck one time with no other issues," so Plaintiff's Complaint should be dismissed.  (Doc. 15, at 14.)

1. Eleventh Amendment – Official Capacity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Interpretations of this Amendment firmly "establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (citation and internal quotation marks omitted).  Eleventh Amendment immunity stays "in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (citations omitted). The bar to suit remains unless a waiver of immunity or congressional override exists.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  A State official sued in his official capacity is afforded this protection because a judgment against him would "impose[] liability on the entity that he represents." Graham, 473 U.S. at 169 (citation omitted).

Sheriffs in Georgia are "arms of the state" for Eleventh Amendment purposes.  Temple v. McIntosh Cnty., No. 2:18-cv-91,

2019 WL 287482, at *4 (S.D. Ga. Jan. 22, 2019).  Eleventh Amendment
protection also extends to deputy sheriffs.  <u>Grech v. Clayton</u>
<u>Cnty.</u>, 335 F.3d 1326, 1336 (11th Cir. 2003).  Moreover, this
District has confirmed that Eleventh Amendment protections for
sheriffs and deputies reach beyond the jailhouse to other
traditional law enforcement functions, including arrests.  <u>Temple</u>,
2019 WL 287482, at *4.  Based on this, Defendant Martin, as a
sheriff's deputy executing an arrest, is entitled to the
protections of the Eleventh Amendment because any recovery against
him would operate against the State of Georgia, and the State of
Georgia has not waived its immunity or consented to be sued.
Therefore, to the extent Plaintiff asserts any claims against
Defendant Martin in his official capacity, those claims are
**DISMISSED.**

### 2. <u>Qualified Immunity - Individual Capacity</u>

Defendant Martin also asserts qualified immunity as a defense
to Plaintiff's claims.  "Qualified immunity offers complete
protection for government officials sued in their individual
capacities if their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known."  <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1254
(11th Cir. 2010) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818
(1982); <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002))
(alterations and internal quotation marks omitted).  "Qualified

immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). In this case, Defendant Martin was arresting Plaintiff when the alleged violation occurred, a quintessential job-related function for a sheriff's deputy. There is nothing in the Complaint that suggests Defendant Martin was not acting within his discretionary authority during the arrest. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) ("[T]here can be no doubt

14

that [the officer] was acting in his discretionary capacity when he arrested [plaintiff].")

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Accordingly, the Court must turn to the Complaint to see if Plaintiff has alleged sufficient facts to demonstrate that Defendant Martin is not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016). Courts must utilize a two-part framework to evaluate the qualified immunity defense. First, as a threshold inquiry, the Court addresses whether Plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the Plaintiff, show a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id.

In suits pursued under § 1983, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. Cnty. Of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998), overruled on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); accord Wooten v. Campbell, 49 F.3d

696, 699 (11th Cir. 1995). Because of this, the Court will analyze these defenses together.

To protect public officials from meritless claims, the Complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).[5] Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007) (citing Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam)).

The first step of the qualified immunity analysis is to determine whether Plaintiff's facts, taken in the light most favorable to Plaintiff, show that Defendant Martin's conduct

---

[5] See also Randall, 610 F.3d at 709-10 ("Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in Iqbal. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."); Staco v. Miami-Dade Cnty., 536 F. Supp. 2d 1301, 1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a plaintiff pleads facts or makes admissions that demonstrate that a defense is applicable on the face of the pleadings." (citing Marsh v. Butler Cnty., 268 F.3d 1014, 1022 (11th Cir. 2001))).

violated his Fourth Amendment protection against unreasonable searches and seizures.   The Court finds they do.

Plaintiff alleges Defendant Martin used excessive force when arresting him.   To establish a Fourth Amendment excessive force claim, Plaintiff must allege sufficient facts to show Defendant Martin's conduct was objectively unreasonable.[6]   Graham v. Connor, 490 U.S. 386, 395 (1989).   The Court must judge the officer's actions from the perspective of a reasonable officer at the scene. Id. at 396.   To determine if the force used was reasonable, accepting the Plaintiff's allegations as true, the Court considers: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."   Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004).

Plaintiff asserts Defendant Martin hit him after he was already in handcuffs and under the officers' control.   Even if Plaintiff was uncooperative while in handcuffs, which the facts do not suggest, since he was constrained, the amount of force Defendant Martin used was beyond what was necessary.   The Eleventh Circuit has held "the application of gratuitous force on an already-handcuffed and compliant detainee or arrestee constitutes

---

[6] Defendant Martin does not challenge whether or not a seizure occurred, so the only relevant analysis for the Court analyzing this claim against him is whether or not the force used during the arrest was reasonable.

excessive force in violation of the Fourth Amendment, even if there is no visible or compensable injury." Gomez v. U.S., 601 F. App'x 841, 850 (11th Cir. 2015); see also Lee, 284 F.3d at 1200 (holding force was excessive, and objectively unreasonable, when officer slammed arrestee's head against the trunk of a car after she was arrested, handcuffed, and completely secured); Hadley v. Gutierrez, 526 F.3d 1324, 1333-34 (11th Cir. 2008) (denying qualified immunity because officer struck arrestee in the stomach even though he was not resisting arrest); Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014) (noting that the Eleventh Circuit has repeatedly ruled that officers violate the Fourth Amendment and are denied qualified immunity if they use gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands).

Viewing the facts in the light most favorable to Plaintiff, he was under control and not resisting arrest at the time Defendant Martin struck him. Further, Defendant Martin's statement, that the hit was for making him crawl through a window, additionally demonstrates that the punch was unnecessary, and instead served as payback for having to find him after he fled the scene of the accident. Consequently, there was no need for the application of force and therefore no legitimate relationship between the amount of force used and any justified reasoning.

Based on this, the Court finds a reasonable officer at the scene would have found Defendant Martin's use of force unreasonable and unnecessary given the circumstances of the arrest.   The Court finds that Defendant Martin's use of unreasonable force consequently violated Plaintiff's Fourth Amendment rights.

Having satisfied the first element of the qualified immunity analysis, the Court now looks at whether the violated constitutional right was clearly established.   The Court finds it was.   The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). The pertinent analysis in the Fourth Amendment context is "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [he] confronted." Mullenix v. Luna, 577 U.S. 7, 13 (2015) (internal quotations and citations omitted).  As to Defendant Martin's use of force, the Court deems it clearly established that you cannot use excessive and gratuitous force on an already detained and handcuffed arrestee based on the

extensive case law with indistinguishable facts. See Gomez, 601 F. App'x at 850; Lee, 284 F.3d at 1200; Hadley, 526 F.3d at 1333-34; Saunders, 766 F.3d at 1265. Accordingly, the Court finds that Defendant Martin is not afforded the protection of official immunity with regards to claims brought against him in his individual capacity, so his motion to dismiss is **DENIED IN PART**. The excessive force claim asserted against Defendant Martin in his individual capacity **SHALL PROCEED**.

## B. Claim 2: Liability of Supervisors

Plaintiff's second claim groups together the remaining Defendants and alleges they were supervisors of Defendant Martin who should have removed him from "street deputy duty" based on his prior incidents that supervisors should have known about. (Compl., at 19.) Each Defendant filed his own motion to dismiss and the Court addresses them below.

### 1. Jane/John Does

Plaintiff's Complaint names two groups of unidentified Defendants: (1) Officer John or Jane Doe(s), acting under color of law as supervisors of the Richmond County Sheriff's Department; and (2) John and/or Jane Does, members of the Sheriff's Merit Board (collectively "the Does"). "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also Fitzpatrick v. Ga. Dep't of Corr., No. CV 612-022, 2012 WL 5207474, at *8 (S.D.

Ga. Sept. 12, 2012), *R. & R. adopted as modified*, No. CV 612-022, 2012 WL 5207472 (S.D. Ga. Oct. 22, 2012). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" and thus discovery would uncover the unnamed defendant's identity. Richardson, 598 F.3d at 738 (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)); Daleo v. Polk Cnty. Sheriff, No. 8:11-CV-2521, 2012 WL 1805501, at *4-5 (M.D. Fla. May 17, 2012) (citing Dean, 951 F.2d at 1215-16).

In this case, Plaintiff does not describe the Does with any specificity whatsoever. They are named in the caption of the case in the two groups as explained above. Beyond that, Plaintiff's Complaint only mentions the Does in a grouping with the other Defendants when alleging they had access to evidence of Defendant Martin's prior incidents, they had a duty to protect the public from Defendant Martin but failed to do so, and they failed to follow their supervisory duties. (Compl. ¶¶ 130-32, 135.) Plaintiff provides no other evidence or descriptions as to who these fictitious characters might be.

Bare descriptions and conclusory allegations "do[] not equate to the real possibility that these unknown individuals' identities will be revealed" during discovery, and the Court will not enable a fishing expedition on account of Plaintiff's use of placeholders.

See Fitzpatrick, 2012 WL 5207474, at *8.   The Court therefore
**DISMISSES** all claims against John Doe(s) and Jane Doe(s).

2. Remaining Defendant Supervisors

Defendants   Roundtree,   D'Amico,   Lamkin,   Steptoe,   and
Strickland   (hereinafter   the   "Defendant   Supervisors")   each
submitted almost identical motions to dismiss (Docs. 14, 16, 19-
21); therefore, the Court will analyze their arguments together.
Each of the Defendant Supervisors is sued in his individual
capacity for "actions and/or inactions taken under color of law"
as a supervisor of Defendant Martin with the Richmond County
Sheriff's Department.   (Compl. ¶¶ 6, 8-11.)   The Defendant
Supervisors move to dismiss because: (1) they cannot be liable as
supervisory officials for claims brought under § 1983, (2) they
are entitled to qualified immunity for being sued in their
individual capacities, and (3) they are entitled to Eleventh
Amendment immunity for being sued in their official capacities.

The Court first addresses the supervisory liability defense.
For purposes of this analysis, the Court will assume that Defendant
Martin's act involving excessive force was unconstitutional.
Typically, "supervisory officials are not [] liable under § 1983
for the unconstitutional acts of their subordinates on the basis
of respondeat superior or vicarious liability." Hartley v.
Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and
internal quotation marks omitted); accord Stallworth v. Wilkins,

22

802 F. App'x 435 (11th Cir. 2020). To impose supervisory liability for § 1983 violations, a plaintiff must show either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall, 610 F.3d 701. Plaintiff does not allege the supervisors personally participated in the use of excessive force, so the Court must determine whether there is a causal connection between the actions of the supervisors and Defendant Martin's excessive force use.

    To establish a causal connection, Plaintiff must show either: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (internal quotation marks omitted) (quoting Gonzalez, 325 F.3d at 1234-45 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of

continued duration, rather than isolated occurrences." <u>Hartley</u>, 193 F.3d at 1269 (citing <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990)).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  <u>Cottone</u>, 326 F.3d at 1360-61 (quoting <u>Gonzalez</u>, 325 F.3d at 1234) (alterations in original).

The Court's analysis therefore turns on whether the prior incidents outlined in the Complaint were sufficient to put the supervisors on notice that Defendant Martin would use excessive force against the Plaintiff in this case.  The Court finds they were not.

Plaintiff asserts that had the Defendant Supervisors reviewed Defendant Martin's record, they would have seen it was "substantially likely that Martin would use force that was not objectively reasonable again by the time he hit Martin." (Compl. ¶ 5.)  When looking at the prior incidents, they definitely show that Defendant Martin has broken department procedures on more than one occasion, but striking an arrestee with a baton on the back of the knee in February of 2011 is the only prior incident involving the use of excessive force.  Plaintiff's conclusory allegations suggest supervisors should have acted, or at least been aware that Defendant Martin was likely to lash out like he did against Plaintiff.  However, there is no causal connection between Defendant Martin's prior transgressions – only one of which

involved the use of excessive force – and his use of force against Plaintiff.   It is hard to reason that a complaint that Defendant Martin was "unprofessional and aggressive" when directing traffic or that he violated policy by "boxing in" a motorcycle would put the supervisors on notice that he was likely to use excessive force against a handcuffed arrestee.   See Williams v. Santana, 340 F. App'x 614, 619 (finding causal connection was established because complaint alleged numerous prior incidents of officer's *use of force* was sufficient to require supervisor to act) (emphasis added).   Although Plaintiff may have established that Defendant Martin has a history of issues with the Department and its procedures, Plaintiff failed to meet the rigorous standard required to show a causal connection between Defendant Supervisors and Defendant Martin's unconstitutional use of excessive force. Further, Plaintiff provides no facts to support his claim that the supervisors were violating any policies or job duties by failing to review Defendant Martin's file or ignoring Defendant Martin's tendencies.    Plaintiff simply provides conclusory and vague allegations that the supervisors should have reviewed his file or should have been aware of these issues, and that the seven incidents "show that Martin had a propensity to overact especially when someone challenged him." (Doc. 25, at 8.)   The Court finds this is not sufficient to support a causal connection.   See Franklin v. Curry, 738 F.3d 1246, 1251 (finding no supervisory

liability because plaintiff's repeated allegations that supervisors were deliberately indifferent, or that their actions resulted in deliberate indifference, carry no weight).

Without a causal connection, there is no basis for supervisory liability. Based on this finding, the Court deems it unnecessary to analyze Defendant Supervisors' additional defenses. As supervisors, Defendants Roundtree, D'Amico, Lamkin, Steptoe, and Strickland cannot be held liable for Defendant Martin's unconstitutional acts. The Court therefore **DISMISSES** all claims against Sheriff Richard Roundtree, Major Steven Strickland, Sergeant William Steptoe, Lieutenant Amelio R. Lamkin, and Lieutenant Mike D'Amico.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Martin's motion to dismiss (Doc.15) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Fourth Amendment claims against Defendant Martin in his individual capacity **SHALL PROCEED**. Plaintiff's other claims against Defendant Martin are **DISMISSED**. Defendants John or Jane Doe(s), Roundtree, Strickland, Steptoe, Lamkin, and D'Amico's motions to dismiss (Docs. 14, 16-21) are **GRANTED**. The **CLERK IS DIRECTED** to **TERMINATE** Sheriff Richard Roundtree, Officer John or Jane Doe(s), Major Steven Strickland, Sergeant William Steptoe, Lieutenant Amelio R. Lamkin, Lieutenant Mike D'Amico, and John

and/or Jane Does - members of the Sheriff's Merit Board as Defendants in this case.

    **ORDER ENTERED** at Augusta, Georgia, this 5th day of February, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

27